Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Byron R. Goldstein (SBN 289306)
brgoldstein@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Bruce C. Fox
bruce.fox@obermayer.com
Jeffrey B. Cadle
jeffrey.cadle@obermayer.com
Andrew J. Horowitz
andrew.horowitz@obermayer.com
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
500 Grant Street, Suite 5240
Pittsburgh, PA 15219
Tel: (412) 566-1500

Attorneys for Plaintiff and the Proposed Classes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMA FOSTER, on behalf of herself and all those similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>ADVANTAGE SALES AND MARKETING, LLC d/b/a ADVANTAGE SOLUTIONS,<br><br>     Defendant. | Case No. 3:18-cv-07205-LB<br><br>**NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION SETTLEMENT**<br><br>Hon. Laurel Beeler<br><br>Date:    December 5, 2019<br>Time:    9:30 a.m.<br>Dept:    Courtroom B, 15th Floor<br>Trial:    Not set |

NOTICE OF UNOPPOSED MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION SETTLEMENT– CASE NO. 3:18-CV-07205-LB

767521.25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 5, 2019 at 9:30 a.m., in the Courtroom of the Honorable Laurel Beeler, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Wilma Foster and proposed plaintiffs Adam Thimons and Kimberley Schmidt (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, will and hereby do move the Court to: preliminarily approve the Settlement Agreement between the Plaintiffs and Defendant Advantage Sales & Marketing LLC d/b/a Advantage Solutions ("Advantage") settling the class, collective, and representative claims under California law and the federal Fair Labor Standards Act ("FLSA") alleged in this case; certify for settlement purposes only the Federal Rule of Civil Procedure Rule 23 class described herein; certify for settlement purposes only the FLSA collective described herein; appoint Goldstein, Borgen, Dardarian & Ho LLP and Obermayer Rebmann Maxwell & Hippel, LLP as class counsel; appoint Wilma Foster as Class Representative; appoint Atticus as the Settlement Administrator; authorize the mailing of Class Notices (as defined in the Settlement Agreement and the Memorandum of Points and Authorities); grant leave to file a second amended complaint; and schedule a final approval hearing date for March 5, 2020 at 9:30 a.m., or as soon thereafter as the matter may be heard.

This Motion is based upon: the Unopposed Motion for Preliminary Approval of Class, Collective, and Representative Action Settlement; the Memorandum of Points and Authorities in Support Thereof; the Declaration of Laura L. Ho and the exhibits thereto; the Declaration of Bruce C. Fox; the Declarations of Wilma Foster, Adam Thimons, and Kimberley Schmidt; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

767521.25

1  Dated:  November 20, 2019              Respectfully submitted,

2

3                                             _/s/ Laura L. Ho_____
                                             Laura L. Ho

4                                         GOLDSTEIN, BORGEN, DARDARIAN & HO

5

6                                         OBERMAYER REBMANN MAXWELL & HIPPEL, LLP

7                                         Attorneys for the Plaintiffs and Proposed Classes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

767521.25

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ............................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES................................................ 1

I.     INTRODUCTION ........................................................................... 1

II.    ALLEGATIONS AND PRE-SETTLEMENT PROCEEDINGS................... 1

III.   THE PROPOSED SETTLEMENT AND ALLOCATIONS ....................... 3

IV.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES .................. 4

      A.    The California Class Satisfies the Rule 23 Requirements. ................ 5

      B.    The FLSA Collective Satisfies the Collective Action Requirements................ 6

V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
       SETTLEMENT ......................................................................... 7

      A.    The California Class Settlement Is Fair, Adequate and Reasonable. ................ 7

           1.    The Settlement Is Presumed Reasonable and Fair Because It
              Resulted From Arms-length Mediation Between Experienced
              Counsel Overseen by Magistrate Judge Westmore. .............................. 8

           2.    The Strength of Plaintiff's Claims and the Risks of Continued
              Litigation. ......................................................................... 8

                a.    Uncertainties on the Merits of Advantage's Motion to
                    Compel Individual Arbitration Favor Settlement. .................... 9

                b.    Uncertainties at the Class Certification Stage Favors
                    Settlement. ......................................................................... 9

                c.    Uncertainties about Amount of Overtime Worked and
                    Relatively Short Liability Period Favor Settlement. .................. 9

                d.    The Delay and Expense of Proceeding to Trial and Post-
                    Trial Appeals Favors Settlement. ............................................ 10

           3.    The Amount Offered In Settlement is Fair and Reasonable................ 10

           4.    Settlement of PAGA Penalties is Reasonable. ............................ 13

      B.    The Court should Grant Preliminary Approval of the FLSA Collective
          Action Settlement. ............................................................... 14

VI.   ENHANCEMENT PAYMENTS TO THE NAMED PLAINTIFFS AND
       ATTORNEYS' FEES AND COSTS FOR INCLUSION IN CLASS NOTICES........ 15

      A.    The Proposed Enhancement Payments Are Fair. ............................ 15

i

767521.25

B.   Attorneys' Fees of One-Third of the Common Fund Are Justified................. 17

C.   The Court Should Approve the Settlement Administrator, Notice
Process, and Notices. ....................................................................... 21

1.   California Class Members ..................................................................... 21

2.   Non-California Opt-in Eligible Plaintiffs ............................................. 22

VII.   CONCLUSION ...................................................................................... 23

767521.25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Balderas v. Massage Envy Franchising, LLC*,
No. 12-cv-06327-NC, 2014 U.S. Dist. LEXIS 99966 (N.D. Cal. July 21, 2014) ...................11

*Barbosa v. Cargill Meat Sol. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ..........................................................................................14

*Barnes v. Equinox Group, Inc.*,
No. C 10-3586 LB, 2013 U.S. Dist. LEXIS 109088 (N.D. Cal. Aug. 1, 2013) ......................19

*Bisaccia v. Revel Sys.*,
No. 17–cv–02533–HSG, 2019 U.S. Dist. LEXIS 119286 (N.D. Cal. July 17, 2019)..............4

*Bisaccia v. Revel Sys.*,
No. 17-cv-02533-HSG, 2019 U.S. Dist. LEXIS 28773 (N.D. Cal. Feb. 22, 2019) ................11

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................................18

*Bolton v. U.S. Nursing Corp.*,
No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299 (N.D. Cal. Oct. 18, 2013) .............*passim*

*Boyd v. Bank of Am. Corp.*,
300 F.R.D. 431 (C.D. Cal. 2014)..............................................................................................6

*Brawner v. Bank of Am. N.A.*, No. 3:14-cv-02702-LB, 2016 U.S. Dist. LEXIS 4975
(N.D. Cal. Jan. 14, 2016)..................................................................................................*passim*

*Burden v. Selectquote Ins. Servs.*,
No. C 10-5966 LB, 2013 U.S. Dist. LEXIS 109110 (N.D. Cal. Aug. 1, 2013) ..........12, 18, 19

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) .................................................................................................6

*Churchill Vill., LLC. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................................................................23

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................................................18

*Deluca v. Farmers*,
386 F. Supp. 3d 1235 (N.D. Cal. 2019)...................................................................................3

767521.25

*Dennis v. Kellogg Co.*,
No. 09-CV-1786-IEG (WMC), 2013 U.S. Dist. LEXIS 64577 (S.D. Cal. May 3, 2013)................................................................................................................23

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) ....................................................................16

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) ......................................................................5

*Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*,
926 F.3d 539 (9th Cir. 2019) (en banc) ............................................................7

*Farrar v. Hobby*,
506 U.S. 103 (1992) ........................................................................................18

*Gaudin v. Saxon Mortg. Servs., Inc.*,
297 F.R.D. 417 (N.D. Cal. 2013) ......................................................................5

*Gribble v. Cool Transports Inc.*,
No. CV 06-04863 GAF, 2008 U.S. Dist. LEXIS 115560 (C.D. Cal. Dec. 15, 2008) ............23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................7

*Haralson v. U.S. Aviation Servs. Corp.*,
383 F. Supp. 3d 959 (N.D. Cal. 2019)............................................................13

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb. 6, 2012) ..............15, 16

*K.H. v. Sec'y of Dep't of Homeland Sec.*,
No. 15-cv-02740-JST, 2018 U.S. Dist. LEXIS 125459. (N.D. Cal. July 26, 2018) ..............14

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010) ........................................................................18

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ......................................................................14

*Nelson v. Avon Prods.*,
No. 13-cv-02276-BLF, 2015 U.S. Dist. LEXIS 51104 (N.D. Cal. Apr. 17, 2015)..................5

*Nelson v. Avon Prods.*,
No. 13-cv-02276-BLF, 2017 U.S. Dist. LEXIS 26451 (N.D. Cal. Feb. 24, 2017) ..............11

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ............................................................................7

767521.25

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................. 17

*Patel v. Trans Union LLC*,
    No. 14-cv-00522-LB, 2018 U.S. Dist. LEXIS 40282 (N.D. Cal. Mar. 11, 2018)............ 18, 19

*Roe v. SFBC Mgmt., LLC*,
    No. 14-cv-03616-LB, 2017 U.S. Dist. LEXIS 57771 (N.D. Cal. Apr. 14, 2017) .................. 8

*Saleh v. Valbin Corp.*,
    No. 17-CV-00593-LHK, 2018 U.S. Dist. LEXIS 195348 (N.D. Cal. Nov. 15, 2018) ........... 14

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13-cv-2540-HSG, 2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) ................. 11

*Taylor v. Meadowbrook Meat Co.*, No. 3:15-cv-00132-LB,
    2016 U.S. Dist. LEXIS 125895 (N.D. Cal. Sept. 15, 2016) ................................ 12, 19, 20, 21

*Tumulty v. FedEx Ground Package Sys., Inc.*,
    No C04-1425P, 2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 16, 2005).................... 3, 15

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ........................................................................... 6

*In re Uber FCRA Litig.*,
    No. 14-cv-05200-EMC, 2017 U.S. Dist. LEXIS 101552 (N.D. Cal. June 29, 2017) ............ 11

*Viceral v. Mistra Grp., Inc.*,
    No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) ........ 11, 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................. 19, 20

*Williams v. Costco Wholesale Corp.*,
    No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ............. 23

**State Cases**

*McBain v. Behr Process Corp.*,
    No. RG 17855986 (Alameda County Superior Court) ........................................... 12

*ZB, N.A. v. Superior Court*,
    8 Cal. 5th 175 (2019) ............................................................................ 10

**Federal Statutes**

29 U.S.C. § 216(b) ...................................................................................... 1, 6, 18

Class Action Fairness Act (CAFA) ................................................................... 4

v

Notice of Unopposed Motion & Motion for Preliminary Approval of Class, Collective, and Representative
Action Settlement– Case No. 3:18-cv-07205-LB

767521.25

Fair Labor Standards Act (FLSA) ...................................................................*passim*

**State Statutes**

Cal. Code Civ. Proc. § 1021.5 .............................................................................. 18

Cal. Code Regs. Title 8 §§ 11040, 11070 .............................................................. 9

Cal. Lab. Code
    § 515(d)(1) .................................................................................................... 15
    § 558 ............................................................................................................. 10
    §§ 1194(a), 2699(g)(1) ................................................................................. 18
    § 2699(e)(2) .................................................................................................. 14

California Labor Code Private Attorney General Act (PAGA) .............................*passim*

California Unfair Competition Law ......................................................................... 1

**Rules**

Fed. R. Civ. P.
    23 ........................................................................................................... 5, 6, 11
    23(a) ................................................................................................................ 5
    23(a)(4) ........................................................................................................... 5
    23(b)(3) ........................................................................................................... 5
    23(c)(2)(B) ..................................................................................................... 23
    23(e) ................................................................................................................ 7

**Regulations**

29 C.F.R.
    § 541.200(a) .................................................................................................... 9
    § 541.500(a) .................................................................................................... 9

**Other Authorities**

*N.D. Cal. Class Settlm't Guidance ¶*
    1(a) .................................................................................................................. 5
    1(c) ................................................................................................................ 22
    1(e) ................................................................................................................ 10
    9 .................................................................................................................... 17
    11 .................................................................................................................. 12

NOTICE OF UNOPPOSED MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE
ACTION SETTLEMENT– CASE NO. 3:18-CV-07205-LB

767521.25

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Wilma Foster and proposed plaintiffs Adam Thimons and Kimberley Schmidt move for preliminary approval of a class and collective action settlement of claims under the FLSA, the California Labor Code, the California Unfair Competition Law ("UCL"), and the California Labor Code Private Attorney General Act ("PAGA") on behalf of Customer Development Managers-Retail ("CDMRs"), against Defendant Advantage Sales & Marketing LLC d/b/a Advantage Solutions ("Advantage"). *See* Stipulation and Agreement to Settlement Class, Collective, and Representative Action ("Settlement Agreement"), Exhibit A to the Declaration of Laura L. Ho in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class, Collective, and Representative Action Settlement ("Ho Decl."), filed herewith.[1]

The Settlement is an excellent result for the Plaintiffs, reached early and efficiently while a Motion to Compel individual arbitration was pending. The Settlement provides a non-reversionary gross payment of $1,200,000.00, plus a separate payment of the employer's share of payroll taxes for the wage portion of the settlement payment. Moreover, shortly after the initial Complaint was filed, Advantage reclassified CDMRs from exempt to non-exempt.

Accordingly, Plaintiffs respectfully request that the Court enter the accompanying Proposed Order granting preliminary approval of the Settlement.

### II.    ALLEGATIONS AND PRE-SETTLEMENT PROCEEDINGS

Plaintiff Wilma Foster filed this wage and hour putative California class and nationwide collective action against Advantage on November 28, 2018. ECF No. 1. The First Amended Complaint, which was filed on February 4, 2019, added a PAGA representative action claim. ECF No. 15. Adam Thimons and Kimberley Schmidt filed consent to join forms pursuant to 29 U.S.C. 216(b) on December 21, 2018. ECF No. 14. The Second Amended Complaint ("SAC") adds opt-in plaintiffs

---

[1] Although Advantage does not oppose Plaintiffs' motion, and seeks preliminary approval of the settlement agreement, Advantage does not adopt or validate the statements or arguments contained herein. The statements and arguments contained herein are Plaintiffs', not Advantage's.

767521.25

Adam Thimons and Kimberley Schmidt as named plaintiffs.  SAC ¶¶ 4-5.

Advantage is a California limited liability company with its headquarters in Irvine, California. *Id.* ¶ 6.  Advantage provides merchandising and related services for consumer products in retail stores. *Id.* ¶ 11.  CDMRs visit the retail stores where they engage in the merchandising services, such as building advertising displays and ensuring the products are properly stocked, priced, and displayed within the retail stores.  *Id.* ¶¶ 12-16.

Advantage first classified its CDMRs as exempt from overtime January 2017 and, after the Complaint was filed, reclassified its CDMRs as non-exempt around December 31, 2018.  *See id.* ¶¶ 33, 36; Ho Decl. ¶ 7.  Plaintiff alleges Advantage misclassified all CDMRs as exempt from overtime under the Fair Labor Standards Act.  SAC ¶¶ 43-53, and California CDMRs as exempt from overtime under the California Labor Code and failed to provide California CDMRs with meal periods, rest periods, accurate wage statements, and all wages due at discharge.  *Id.* ¶¶ 54-83.

Advantage disputes that CDMRs were misclassified under either state or federal law. Advantage further alleges Foster, the other opt-in plaintiffs and substantially all the other CDMRs agreed to individual arbitration.  Ho Decl. ¶ 10.

The Parties attempted direct settlement discussions in March 2019.  *Id.* ¶ 8.  Prior to those settlement discussions, Advantage produced documents and data that allowed Plaintiff to make an informed damages assessment, and Plaintiff provided Advantage a detailed written statement prior to the settlement discussions that set forth Plaintiffs' theories for recovery and supporting facts.  *Id.*  On March 11, 2019, the parties met in person for a day-long settlement discussion and made significant progress but were unable to reach an agreement.  *Id.* ¶ 9.

Shortly thereafter, on March 28, 2019, Advantage filed a motion to compel arbitration ("MTC") that seeks to compel Foster and the other opt-in plaintiffs to individual arbitration and stay the PAGA claim.  ECF No. 25; Ho Decl. ¶ 10.  On April 4, 2019, Plaintiff served Requests for Production related to Advantage's MTC.  Ho Decl. ¶ 11. On April 8, 2019, Plaintiff asked Advantage whether it would consent to Plaintiff filing a SAC, which would add two of the opt-in plaintiffs, Adam Thimons and Kimberly Schmidt, as named plaintiffs.  Ho Decl. ¶ 12.  The Parties had several meet and

767521.25

1    confers about Plaintiffs' discovery requests and the filing of a SAC.  Ho Decl. ¶ 13.

2         Before Plaintiffs filed their opposition to the MTC, the Parties filed a Stipulation requesting a

3    referral to a settlement conference and a continuance of the briefing schedule on the MTC.  ECF No.

4    28.  The Court granted the Parties' request, and the case was referred to Magistrate Judge Westmore

5    for a Settlement Conference.  ECF No. 29.  Judge Westmore held a Settlement Conference with the

6    Parties on September 6, 2019.  ECF No. 37.  With Judge Westmore's assistance, the Parties reached a

7    tentative agreement and memorialized the material terms on the record.  ECF No. 37.  The Parties then

8    engaged in negotiations over the long-form settlement agreement, which was fully executed on

9    November 7, 2019.  Ho Decl. ¶ 17.

10              III.    **THE PROPOSED SETTLEMENT AND ALLOCATIONS**

11        The Settlement requires Advantage to pay a total of $1,200,000, plus the employer share of

12   payroll taxes.  *See* Settlement Agreement ("SA") (Ho. Decl. Ex. A) §§ 1.9, 2.7(a) and (k), 3.5. From

13   the $1,200,000 common fund, the settlement provides for:

14        • $734,000 ("Net Settlement Amount,") roughly equally divided[2] between the two
            groups of California ($362,000)[3] and non-California Plaintiffs ($372,000).  *See* Ho
15          Decl. ¶ 22.  Each individual within the two groups will be allocated a pro rata amount of
            that group's share of the Net Settlement Amount based on workweeks.  (SA § 2.7(e));
16

17        • Each individual's payment will be allocated one-third to wages and two-thirds to non-
            wages.[4]  (SA § 2.7(e));

18

19   ─────────────────────

20   [2] This division is based on the essentially equal total monetary exposure between the two groups after
     taking into account a 50% discount for the non-California plaintiffs due to the risk of application of the
21   fluctuating workweek on the FLSA overtime claim.  Ho Decl. ¶¶ 36, 47, 50.  The Ninth Circuit has not
     yet ruled on retroactive application of the fluctuating workweek in misclassification cases.  District
22   courts have come out both ways on the issue. Compare *Deluca v. Farmers*, 386 F. Supp. 3d 1235,
     1264-65 (N.D. Cal. 2019) (considering and rejecting arguments advanced by the employer that the
23   FWW could be used to calculate damages) with *Tumulty v. FedEx Ground Package Sys., Inc.*, No C04-
     1425P, 2005 U.S. Dist. LEXIS 25997, at *16 (W.D. Wash. Aug. 16, 2005) (holding that the fluctuating
24   workweek method of calculation was appropriate where FedEx drivers "clearly understood that they
     would be paid a fixed weekly salary regardless of the number of hours").
25

26   [3] PAGA payment to LWDA is deducted from allocation to California class members.

27   [4] This split is routinely approved by courts in this district.  *See* Joint Stipulation for Class Action
     Settlement at ¶ 38, *Brawner v. Bank of America N.A.*, No. 3:14–cv–02702–LB (N.D. Cal. Aug. 6,

28

─────────────────────
                                          3

767521.25

- All Class and Collective Action members will be automatically mailed a check (with no claim forms required) except those California Class Members who affirmatively opt out.  S*ee* Ho Decl. ¶ 25;

- If any California Class Members who do not opt out fail to cash their checks within 180 days, any remaining amounts will be given to a *cy pres* beneficiary – Employee Rights Advocacy Institute for Law and Policy, which is a non-profit devoted to advocating for employee rights.  (SA § 2.7(g)).  The parties do not anticipate much if any monies will go to *cy pres*.  Ho Decl. ¶ 25;

- If any of the non-California CDMRs decide not to cash their settlement checks, and therefore not opt into the Settlement, their unclaimed checks will be returned to Advantage 180 days after the mailing of the check.  (SA § 2.4(f)).  CDMRs who choose not to opt into the settlement will not be releasing their claims, so this is not a reversion.  *See id.*; Ho Decl. ¶ 20;

- $10,000 to the California Labor Workforce Development Agency ("LWDA") for the PAGA claims (SA § 2.7(f));

- Enhancement payments for the named plaintiffs -- $10,000 to Foster and $3,000 each to Thimons and Schmidt, for a total of $16,000.  (SA § 2.7(d));

- Settlement administration costs for mailing the Notice, processing any objections or opt outs, calculating payment, issuing checks, providing CAFA notice, and related tasks, not to exceed $20,000.  SA § 2.7(b); Ho Decl. ¶ 21 & Ex. B (claims administrator's bid);

- the payment of one-third of the Settlement Amount as attorneys' fees ($400,000) (SA § 2.7(c)); and,

- reimbursement of actual litigation costs of not more than $20,000 (SA §2.7(c)).

The proposed class release is limited to the claims that were alleged or could have been brought based on the facts alleged.  See SA § 4; SAC ¶¶ 1-2.  General releases are limited to the three named plaintiffs in exchange for service awards.  SA § 2.7(d).

## IV.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

Prior to settlement, Plaintiffs had asked Advantage to stipulate to the filing of the SAC, *see* Ho

---

2015), ECF No. 53–1 (settlement amount allocated one-third to wages, two-thirds non-wages), *final approval granted* 2016 U.S. Dist. LEXIS 4975 (N.D. Cal. Jan. 14, 2016); Class Action Settlement Agreement at § IV.C, *Bolton v. U.S. Nursing Corp.*, No. C 12–4466 LB (N.D. Cal. Oct. 3, 2013), ECF No. 45–1 (same), *final approval granted* 2013 U.S. Dist. LEXIS 150299 (N.D. Cal. Oct. 18, 2013); Settlement Agreement of Collective and Class Action Claims at 17–18, *Bisaccia v. Revel Sys.*, No. 17–cv–02533–HSG (N.D. Cal. Sept. 20, 2018), ECF No. 102–2 (same for both California and FLSA), *final approval granted* 2019 U.S. Dist. LEXIS 119286 (N.D. Cal. July 17, 2019).

4

NOTICE OF UNOPPOSED MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE
ACTION SETTLEMENT - CASE NO. 3:18-CV-07205-LB

767521.25

Decl. ¶¶ 12-13, and Advantage agreed in the Settlement Agreement that Plaintiffs will file the SAC adding Adam Thimons and Kimberley Schmidt as named Plaintiffs. SA § 1.23. The class definitions and the claims are essentially unchanged from the FAC. Ho Decl. ¶ 18. The SAC is the basis for the Settlement Agreement, so granting leave to file the amended complaint will facilitate the speedy resolution of this case and payment to the Classes.

A.      **The California Class Satisfies the Rule 23 Requirements.**

Plaintiffs submit that the California Class satisfies the criteria of Fed. Rule Civ. P. 23(a) and (b)(3). The proposed California Class is the same as the class proposed in the operative complaint. *See* SA § 1.3; SAC ¶ 36; *N.D. Cal. Class Settlm't Guidance* ¶ 1(a).

Numerosity is met because the putative class is 59 members. *See* Ho Decl. ¶ 23; *Nelson v. Avon Prods.*, No. 13-cv-02276-BLF, 2015 U.S. Dist. LEXIS 51104, at *15 (N.D. Cal. Apr. 17, 2015) (A class of 40 presumptively satisfies the numerosity requirement). The claims and defenses of Plaintiff Foster are typical of the California class. Specifically, Plaintiff Foster was misclassified as exempt from FLSA and California Labor Code overtime protections, often worked more than eight hours per day and forty hours per week, was not provided meal and rest periods, was not provided accurate itemized wage statements, and was not paid all wages due upon termination. *See generally Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 425 (N.D. Cal. 2013) ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiff satisfies the adequacy requirement of Rule 23(a)(4) because Plaintiff Foster has no conflicts of interest with the California Class Members and is represented by experienced counsel. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 535 (N.D. Cal. 2012); Declaration of Wilma Foster in Support of Plaintiff's Motion for Preliminary Approval of Class, Collective, and Representative Action Settlement, ("Foster Decl.") ¶¶ 10-11; Ho Decl. ¶¶ 40, 60–64; Declaration of Bruce C. Fox, Esq. in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class, Collective, and Representative Action Settlement ("Fox Decl.") ¶ 3-14.

767521.25

1    Common questions of fact and law predominate over individual issues for the California Class.

2    Advantage classified all CDMRs as exempt from overtime protections from January 2017 to December

3    2018. *See* Ho Decl. ¶ 7. CDMRs shared principal job duties to make sure that their assigned products

4    are properly stocked, priced, and displayed within the shelf space at each of the CDMRs' assigned

5    stores. *See* Foster Decl. ¶ 2. Advantage sent CDMRs a schedule, and there were no meal or rest

6    periods included on that schedule. *Id.* ¶ 3. Whether Advantages' arbitration agreements are valid

7    contracts under California law and whether CDMRs qualify for any of the exemptions to overtime

8    protections under California law or the FLSA are common questions of law. *See, e.g.*, *Boyd v. Bank of*

9    *Am. Corp.*, 300 F.R.D. 431, 442 (C.D. Cal. 2014) (real estate appraisers had the same level of

10   discretion, so whether that discretion satisfied the California administrative exemption was a common

11   question under FRCP Rule 23).

12   Accordingly, the Court should certify the proposed California Settlement Class, appoint

13   Plaintiff Wilma Foster as Class Representative and Goldstein, Borgen, Dardarian & Ho and

14   Obermayer, Rebmann, Maxwell & Hippel, LLP as Class Counsel.

15   **B.    The FLSA Collective Satisfies the Collective Action Requirements.**

16   The FLSA authorizes "opt-in" representative actions where the complaining parties are

17   "similarly situated" to other employees. 29 U.S.C. § 216(b); *see generally Tyson Foods, Inc. v.*

18   *Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016). "Party plaintiffs are similarly situated, and may proceed in

19   a collective, to the extent they share a similar issue of law or fact material to the disposition of their

20   FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018). Here, all named

21   and opt-in Plaintiffs worked at Advantage as CDMRs and shared similar job duties with Non-

22   California Opt-in Eligible Plaintiffs: setting up pre-stocked shippers (also referred to as point-of-sales)

23   at assigned retail stores; building displays, end caps, and stack-outs for retail products; transporting

24   cardboard displays for placement in retail stores; participating in mandatory conference calls to receive

25   instructions identifying the quantity of products to be delivered to assigned stores; traveling to and

26   attending regional and national sales meetings; and cleaning and maintaining storage space where

27   promotional displays and products are delivered. Declaration of Adam Thimons in Support of

28

767521.25

1  Plaintiff's Motion for Preliminary Approval of Class, Collective, and Representative Action

2  Settlement, ("Thimons Decl.") ¶ 3, filed herewith; Declaration of Kimberley Schmidt in Support of

3  Plaintiff's Motion for Preliminary Approval of Class, Collective, and Representative Action

4  Settlement, ("Schmidt Decl.") ¶ 3, filed herewith.

5  ## V.      THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
SETTLEMENT

6

7  Settlement is a strongly favored method for resolving disputes, particularly "where complex

8  class action litigation is concerned." *Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*,

9  926 F.3d 539, 556 (9th Cir. 2019) (en banc) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir.

10  2015)).  The Court should grant preliminary approval of the settlement because the settlement of the

11  California class, collective, and representative action is fair, adequate, and reasonable, and the

12  settlement of the FLSA collective action is a reasonable compromise of bona fide disputes.

13  **A.      The California Class Settlement Is Fair, Adequate and Reasonable.**

14  Preliminary approval is appropriate if the proposed settlement is "fair, adequate and

15  reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also*

16  Fed. R. Civ. P. 23(e).  The court need not ask whether the proposed settlement is ideal or the best

17  possible; it determines only whether the settlement is fair, free of collusion, and consistent with the

18  named plaintiffs' fiduciary obligations to the class.  *Stemple v. RingCentral, Inc.*, no. 18-cv-04909-LB,

19  2019 U.S. Dist. LEXIS 138520, at *11 (N.D. Cal. Aug. 15, 2019), citing *Hanlon v. Chrysler Corp.*,

20  150 F.3d 1011, 1026-27 (9th Cir. 1998).  "Where a settlement is the product of arms-length

21  negotiations conducted by capable and experienced counsel, the court begins its analysis with a

22  presumption that the settlement is fair and reasonable."  *Stemple*, 2019 U.S. Dist. LEXIS 138520 at

23  *12, citing *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 570 ("[W]e put a good deal of stock in

24  the product of an arms-length, non-collusive, negotiated resolution.")

25  The proposed settlement merits preliminary approval under the factors set forth in *Hanlon*:

26  "[(1) the strength of the plaintiff's case; [(2) the risk, expense, complexity, and likely duration of

27  further litigation; [(3) the risk of maintaining class-action status throughout trial; [(4) the amount

28

7

767521.25

offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding; [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the class members to the proposed settlement." *See Stemple*, 2019 U.S. Dist. LEXIS 138520 at *11-12; *Roe v. SFBC Mgmt., LLC*, No. 14-cv-03616-LB, 2017 U.S. Dist. LEXIS 57771, at *18 (N.D. Cal. Apr. 14, 2017).

### 1. The Settlement Is Presumed Reasonable and Fair Because It Resulted From Arms-length Mediation Between Experienced Counsel Overseen by Magistrate Judge Westmore.

The settlement was the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with Judge Westmore. *See* Ho Decl. ¶¶ 8-9, 14-17. In Plaintiffs' view, the strength of their claims combined with the reduced exposure resulting from Advantage's voluntary reclassification made early settlement possible. *See* Ho Decl. ¶¶ 7, 27.

Plaintiffs' Counsel believe the Settlement of $1,200,000 plus the employer's share of payroll taxes is an excellent result for the value of the claims, especially given that a settlement was reached efficiently – within one year after the case was filed. Ho Decl. ¶¶ 42-45; Fox Decl. ¶ 2, filed herewith . Plaintiff Foster and proposed plaintiffs Thimons and Schmidt view the settlement as an outstanding achievement. Foster Decl. ¶¶ 7, 13; Thimons Decl. ¶¶ 5, 9; Schmidt Decl. ¶¶ 6, 9.

Plaintiffs and the Class have been represented by experienced counsel, who have had numerous wage and hour class action settlements approved by federal and state courts and who have repeatedly been approved as Class Counsel, including by this District in the *Talamantes* and *Garcia* cases. Ho Decl. ¶¶ 59-64 & Ex. D; Fox Decl. ¶¶ 3-14. Defendant was likewise represented by experienced counsel, who took proactive steps in ensuring that an early, efficient resolution could be had. Ho Decl. ¶ 17.

### 2. The Strength of Plaintiff's Claims and the Risks of Continued Litigation.

Plaintiffs believe the case has significant strengths, but that there are also considerable risks to further litigation.

767521.25

### a. Uncertainties on the Merits of Advantage's Motion to Compel Individual Arbitration Favor Settlement.

Advantage's motion to compel individual arbitration and stay the PAGA action is currently pending before the Court. ECF No. 25. Arbitration is a matter of contract, and plaintiffs did not consent to the contract, and Advantage did not provide consideration because it retained the ability to sue employees in court. Ho Decl. ¶ 30.

Yet there is no guarantee that Advantage would not have won its MTC. *Id.* ¶ 29. Advantage asserts that the arbitration agreements are enforceable, cover this litigation, and waive class litigation. *See* Def's Motion to Compel Individual Arbitration and Stay All Proceedings, ECF No. 25, at 11-26. The uncertainties of whether Advantage would prevail in its MTC favor settlement. Ho Decl. ¶ 30

### b. Uncertainties at the Class Certification Stage Favors Settlement.

Although Plaintiffs are confident that the proposed classes would be certified absent settlement, Advantage can be expected to offer arguments that the arbitration agreements and other individualized issues precludes class certification. Ho Decl. ¶¶ 31-34. Additionally, Plaintiffs expect Advantage to have contested class certification on the grounds that whether class members were exempt from federal and state overtime requirements could require individualized inquiries, including whether all CDMRs' primary duty was to make sales or performed similar amounts of manual labor. *See* 29 C.F.R. § 541.200(a) (federal administrative exemption); 29 C.F.R. § 541.500(a) (federal outside sales exemption); Cal. Code Regs. tit. 8 §§ 11040, 11070 (Wage Orders 4 and 7 setting forth administrative and outside sales exemptions); Ho Decl. ¶ 32. Plaintiffs also anticipate that Advantage would argue that individual inquiries predominate for whether CDMRs were able to take meal and rest periods throughout their work day. *Id.* ¶ 34.

### c. Uncertainties about Amount of Overtime Worked and Relatively Short Liability Period Favor Settlement.

Uncertainties about the amount of overtime worked by CDMRs and the relatively short liability period favors settlement. Plaintiffs assert that Advantage was aware CDMRs worked at least 45 hours per week. *See* SAC ¶ 26. Advantage can be expected to assert that CDMRs worked very little

767521.25

1    overtime, if any.  *See* Ho Decl. ¶ 35.  Proving hours worked is inherently fact-intensive and would

2    likely require a trial.  *Id.*  Further, CDMRs were only misclassified as exempt for a two year period

3    from January 2017 to December 2018, so the total number of overtime hours at stake favors settlement.

**d.  The Delay and Expense of Proceeding to Trial and Post-Trial Appeals
Favors Settlement.**

6         If this settlement is finally approved, Plaintiffs will receive payments shortly thereafter.  *See* Ho

7    Decl. ¶ 28.  Without this early settlement, Plaintiffs would spend time and resources opposing

8    Advantage's motion to compel individual arbitration, responding to discovery, being deposed, giving

9    declarations, assisting their attorneys with motion practice, and ultimately appearing at trial.  *Id.* ¶ 37.

10   While Plaintiffs' Counsel remain confident that Advantage failed to pay CDMRs overtime under state

11   and federal law and to otherwise comply with California law, they recognize that a fact finder could

12   find for Advantage on any one or more of these issues.  *Id.* ¶ 33.  Extensive litigation would not only

13   be costly and time-consuming but also uncertain.  Litigating class certification, establishing class-wide

14   liability, and demonstrating damages for numerous claims would likely take years, necessitate expert

15   witness testimony, and include other costs, risks, and potential delays.  *Id.* ¶¶ 31-37.  Appeals could

16   further delay and jeopardize recovery.  *Id.* ¶ 37.  By contrast, the Settlement, with a Settlement Fund of

17   $1,200,000 ensures timely relief and substantial recovery of the wages, damages, and other amounts

18   that Plaintiffs and Class Members contend they are owed.  *Id.* ¶ 28.  This strongly favors settlement.

**3.  The Amount Offered In Settlement is Fair and Reasonable.**

20        First, while not a term of the Settlement, the injunctive relief sought in the complaint was

21   accomplished.  *See* SAC, Prayer for Relief ¶ K.  Advantage's reclassification of CDMRs as non-

22   exempt around January 1, 2019, in response to Plaintiffs' filing of the Lawsuit in November 2018,

23   provides CDMRs overtime protections under the FLSA and California Labor Code.  Ho Decl. ¶ 7.

24        Second, the Settlement's monetary relief is well within the range of possible approval based on

25   recovery as a percent of maximum exposure.  Ho Decl. ¶ 47; *see also N.D. Cal. Class Settlm't*

26   *Guidance* ¶ 1(e).  Plaintiffs have calculated a maximum total exposure around $4,112,633 for the

27

28

10

767521.25

California Class, including PAGA civil penalties of $528,800.[5]  Ho Decl. ¶ 47.  However, Plaintiffs'

Counsel believe a likely recovery in this action would be much lower, given the litigation risks

discussed above.  *Id.*  Even compared against the maximum exposure, which does not account for the

various risks discussed above, the gross settlement fund represents a 15% recovery, and the net

settlement amount represents a 9% recovery for the California Class, which is within the range of

reasonableness.  *Id.; see Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014

U.S. Dist. LEXIS 99966, at *16-17 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net

settlement amount representing 5% of the projected maximum recovery at trial); *Stovall-Gusman v.

W.W. Granger, Inc.*, No. 13-cv-2540-HSG, 2015 U.S. Dist. LEXIS 78671, at *12-13 (N.D. Cal. June

17, 2015) (approving settlement where net amount represented 7.3 percent of plaintiffs' estimated trial

award); *Viceral v. Mistra Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *21,

23-24 (N.D. Cal. Oct. 11, 2016) (approving gross settlement fund that represented 11.6% of the total

verdict value for the California class when risk on the merits and on certifiability of a class action was

such that "a deeply discounted recovery is better than the substantial likelihood of recovering

nothing").

      California Class Members who worked for the entire class period will receive, before taxes,

around $8,400, and the average recovery will be around $6,135.[6]  Ho Decl. ¶ 28. The $1,200,000 total

fund is comparable to the settlement value other cases that recently received preliminary approval in

this district.  *See, e.g., Bisaccia v. Revel Sys.*, No. 17-cv-02533-HSG, 2019 U.S. Dist. LEXIS 28773, at

*2, 4, 7 (N.D. Cal. Feb. 22, 2019) (granting preliminary approval to hybrid class and collective

settlement of $2,750,000 for inside sales representative in case with 149 FLSA Opt-ins and over 200

Rule 23 class members); *Nelson v. Avon Prods.*, No. 13-cv-02276-BLF,  2017 U.S. Dist. LEXIS

26451, at *4-7 (N.D. Cal. Feb. 24, 2017) (Settlement of District Sales Managers' claim of alleged

---

[5] This amount does not include any wages under Labor Code section 558.  *See ZB, N.A. v. Superior Court*, 8 Cal. 5th 175 (2019).

[6] Maximum and average recovery per class member is calculated from net settlement fund, after deduction of attorneys' fees and costs, service awards, administration fees, and PAGA payment to LWDA.

767521.25

misclassification as exempt from overtime, covering 289 class members with a fund of $1,800,000).

The Settlement will provide the California Class Members with payments that are significant given the litigation risks. Given the large portion of the class that would be excluded from a class or collective action if Advantage succeeded in arguing its arbitration agreements were valid, a discount on these claims is reasonable. *See In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2017 U.S. Dist. LEXIS 101552, at *18 (N.D. Cal. June 29, 2017) ("[A] large portion of the class would be excluded from this litigation, and would be forced to arbitrate their claims individually. Given the small amount of potential recovery per individual, there is a strong likelihood that few would pursue individual arbitration. This fact alone accounts for a significant discount on potential recovery."). California Class Members with the full set of claims and who worked during the entire California Class and Representative Period will receive a net award of around $8,400. *See Ho Decl.* ¶ 43.

The successful result here compares favorably with those in other settlements approved by this Court, most of which do not implicate arbitration agreements. *See Taylor v. Meadowbrook Meat Co.*, No. 3:15-cv-00132-LB, 2016 U.S. Dist. LEXIS 125895, at *4 (N.D. Cal. Sept. 15, 2016) (approving $603,000 settlement for wage and hour violations; no arbitration agreements); *Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299, at *4, 6 (N.D. Cal. Oct. 18, 2013) (approving $1.7 million settlement for 2,765 potential class members for wage and hour violations; no arbitration agreements); *Burden v. Selectquote Ins. Servs.*, No. C 10-5966 LB, 2013 U.S. Dist. LEXIS 109110, at *2, 7 (N.D. Cal. Aug. 1, 2013) (approving $750,000 settlement for 265 potential class members; no arbitration agreements).

Class counsel have litigated misclassification cases with similar claims, but those cases differ in significant ways from this case. *See N.D. Cal. Class Settlm't Guidance* ¶ 11. In *McBain v. Behr Process Corp.*, No. RG 17855986 (Alameda County Superior Court), undersigned counsel secured a settlement of $5 million for 456 class members for the alleged misclassification of in-store sales representatives as exempt from overtime protections. Ho Decl. ¶ 51. *Behr* involved over 71,275 workweeks, whereas here Advantage reclassified the CDMRs shortly after Plaintiff filed her case, so only 21,305 workweeks are at issue. *Id.* Further, the plaintiffs in Behr made significantly more,

767521.25

around $35 per hour, than the plaintiffs here, who make around $22 per hour. *Id.* Thus, the recovery per class member is lower in this case than in *Behr*. The structure and process of this settlement is similar to that of *Behr*, so counsel expects similar participation rates. *Id.*

| McBain v. Behr Processing Corp. | |
|---|---|
| Total Settlement Fund | $5,000,000 |
| Total # Class Members | 456 (62 California and 393 Non-California; 1 on both) |
| # Class Members Notice Sent To | 456 (19 initially returned undeliverable; 18 re-mailed & deliverable) |
| Length of Class Period | California: 5 years, 4 months (Dec 2012 to Apr 2018); Non-California: 3 years, 5 months (Nov 2014 to Apr 2018) |
| Average number of OT hours | 5 hours per week |
| Method of Notice | First Class Mail; Public website |
| # Claims Submitted | Checks mailed to all 456; 454 of 457 checks were cashed (class member on both lists received 2 checks) |
| % Claims Submitted | 99.3% (checks cashed) |
| Average recovery per class member[7] | $26,521.75. (California); $2,725.81 (Non-California) |
| Amounts distributed to Cy Pres | N/A (All California class members cashed their checks) |
| Administrative Costs | $50,000 |
| Attorneys' fees and Costs | One-third of total settlement, or $1,666,667 (Fees); $40,000 (Costs) |

### 4.    Settlement of PAGA Penalties is Reasonable.

The PAGA allocation to the Labor Workforce Development Agency ("LWDA") from the California Class portion of the settlement fund is $10,000, which represents 1.9% of the maximum PAGA exposure. SA § 2.7(e); Ho Decl. ¶ 49. This PAGA allocation is within the range of reasonable settlements. *See, e.g., Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *25-30 (N.D. Cal. Oct. 11, 2016) (approving allocation of less than 1% to PAGA in the

---

[7] Average recovery per class member is calculated from net settlement fund, after deduction of attorneys' fees and costs, service awards, administration fees, and PAGA payment to LWDA.

767521.25

context of a $6 million settlement, a PAGA payment of $20,000); *cf Haralson v. U.S. Aviation Servs. Corp*., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) ("In this district, courts have raised concerns about settlements of less than 1% of the total value of a PAGA claim.").

The PAGA allocation is appropriate in light of Advantage's anticipated arguments that PAGA penalties cannot be stacked and that any court should exercise its discretion to significantly reduce the amount of PAGA penalties because Advantage almost immediately reclassified CDMRs to non-exempt after Plaintiffs filed this action.  *See* Ho Decl. ¶ 49; Cal. Lab. Code § 2699(e)(2).

## B.   The Court should Grant Preliminary Approval of the FLSA Collective Action Settlement.

Settlement of FLSA claims for wages are subject to court approval.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute."  *Id.* at 1354.  District courts in the Ninth Circuit have followed the Eleventh Circuit's decision in Lynn's Food Stores.  *Saleh v. Valbin Corp.*, No. 17-CV-00593-LHK, 2018 U.S. Dist. LEXIS 195348, at *3 (N.D. Cal. Nov. 15, 2018).  Here, the settlement reflects a compromise on disputed issues much like the ones in dispute regarding the California class, plus the additional argument surrounding the fluctuating workweek.  The Settlement was made in an adversarial context with parties represented by experienced counsel, and was reached with the assistance of an experienced mediator, indicating the settlement was not a result of employer's overreaching.  *See* Ho Decl. ¶¶ 8-17; *Lynn's Food Stores*, 679 F.2d at 1354.

This settlement avoids expenditures of resources for all parties and the Court and provides "significant benefit that [Plaintiffs] would not receive if the case proceeded—certain and prompt relief."  *See* Ho Decl. ¶¶ 28, 37; *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). The settlement is also reasonable because it only requires Plaintiffs to release claims asserted in the complaint.  *See* SA § 4; SAC ¶¶1-2, *cf., K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-cv-02740-JST, 2018 U.S. Dist. LEXIS 125459. at *9-11 (N.D. Cal. July 26, 2018) (denying approval under Lynn's Food standard based on overbroad release and collecting cases).

Most importantly, the settlement provides very good value for Plaintiff's claims.  Non-

14

767521.25

California Opt-in Eligible Plaintiffs who worked for the entire collective action period will receive a net award of around $2,305 , which counsel and Plaintiffs believe is a fair and reasonable settlement result.  *See* Ho Decl. ¶ 43; Foster Decl. ¶ 13; Thimons Decl. ¶ 9; Schmidt Decl. ¶ 9.

The average recovery per class member of $1,425 for the Non-California Opt-in Eligible Plaintiffs is reasonably lower than for the California Class Members because the California Class Members have more causes of action.  Ho Decl. ¶ 44.  California Class Members have claims for meal period violations, rest period violations, wage statement violations, and waiting time penalties under California law that are not available to the Non-California Opt-in Eligible Plaintiffs under federal law.  *Id.*  Further, the argument regarding fluctuating workweeks available to Advantage for the calculation of overtime under federal law, is not available under California law, which calculates the regular rate of pay based on non-overtime hours.  *Compare Tumulty v. FedEx Ground Package Sys., Inc.*, No. C04-1425P, 2005 U.S. Dist. LEXIS 25997, at *16 (W.D. Wash. Aug. 16, 2005) (holding that the fluctuating workweek method of calculation was appropriate where FedEx drivers "clearly understood that they would be paid a fixed weekly salary regardless of the number of hours") *with* Cal. Labor Code § 515(d)(1) ("For the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-timed salaried employee, the employee's regular hourly rate shall be 1/40th of the employee's weekly salary.")  Thus, the lower average recovery for Non-California Opt-in Eligible Plaintiffs compared to California Class Members is reasonable.

Because the settlement represents a fair and reasonable resolution of bona fide dispute over wages, the court should approve the settlement.

## VI.    ENHANCEMENT PAYMENTS TO THE NAMED PLAINTIFFS AND ATTORNEYS' FEES AND COSTS FOR INCLUSION IN CLASS NOTICES

### A.    The Proposed Enhancement Payments Are Fair.

The factors this Court uses in determining service awards include:  (1) the time and effort that representatives put into the litigation, (2) the collective outcome of the case, comparing the service awards to the range of monetary recovery available to the class, and (3) assuming personal risks in the lawsuit; *see Brawner v. Bank of Am. N.A.*, No. 3:14-cv-02702-LB, 2016 U.S. Dist. LEXIS 4975, at

15

NOTICE OF UNOPPOSED MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION SETTLEMENT - CASE NO. 3:18-CV-07205-LB

767521.25

*15-16 (N.D. Cal. Jan. 14, 2016) (approving service award of $15,000 to plaintiff who spent 80 to 100 hours explaining how her job worked, strategizing about how to prosecute the case, participating in discovery and depositions, and engaging in mediation and negotiation; *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 U.S. Dist. LEXIS 13797, at *21-24 (N.D. Cal. Feb. 6, 2012) (awarding service payment of $12,500 where the plaintiff spent approximately 100 hours prosecuting the case); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335-36 (N.D. Cal. 2014) (approving $10,000 service award because the plaintiff expended a significant amount of time prosecuting the action despite not signing a general release or facing the risk of industry backlash); *see Brawner*, 2016 U.S. Dist. LEXIS 4975, at *15-16  (approving service award of $15,000 to plaintiff who assumed the risk of paying costs personally if the defendant prevailed in the case).  *See Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 U.S. Dist. LEXIS 150299, at *19 (N.D. Cal. Oct. 18, 2013) (approving service award of $10,000 to plaintiff, focusing on the collective outcome of the case and how the $10,000 award did not misalign settlement interests because 204 class members received more than $1,500 each and the largest recovery was estimated at $3,602.67)

       The proposed enhancement payments of $10,000 to Plaintiff Foster is warranted for the critical role she played in stepping forward to bring this case, the time and effort she expended to help secure the positive collective outcome on the case, the general release she will agree to, and the risks she assumed in the lawsuit.  Plaintiff Foster spent 28.5 hours explaining how her job worked, strategizing about how to prosecute the case, and engaging in mediation and negotiation, a significant investment of time and effort.  Foster Decl. ¶¶ 4-9; *see Brawner*, 2016 U.S. Dist. LEXIS 4975 at *15-16; *Harris*, 2012 U.S. Dist. LEXIS 13797, at *21-24; *Dyer, N.A.*, 303 F.R.D., at 335–36.  Plaintiff Foster actively participated in the settlement conference, where she explained her work experiences at Advantage to Judge Westmore.  Foster Decl. ¶ 7.  She played a critical role in securing this settlement for class members who were too scared to file claims due to fears of negative employment repercussions or might have needed to file individual arbitrations to pursue their claims due to the alleged arbitration agreements.  *See* Foster Decl. ¶ 14; Ho Decl. ¶ 52.  She will sign a Complete and General Release of all Claims in exchange for the service award.  SA § 2.7(d) & Ex. 4.  She also took on the danger of

767521.25

negative notoriety resulting from suing her former employer and the risks of paying costs personally if the defendant prevailed in the case. Foster Decl. ¶ 12; Ho Decl. ¶ 52; *see Brawner*, 2016 U.S. Dist. LEXIS 4975, at *15-16. Further, the requested $10,000 award is not disproportionate to the range of recovery because half of the California Class Members will receive net awards of more than $7,990, and half of the Non-California Opt-in Eligible Plaintiffs will receive net awards of more than $1,470. *See* Ho Decl. ¶ 43; *Bolton*, 2013 U.S. Dist. LEXIS 150299, at *19.

Proposed plaintiffs Thimons and Schmidt request lower incentive awards than Plaintiff Foster because they joined the case only after Foster had filed it, and expended less time and effort compared to Plaintiff Foster. *See* Ho Decl. ¶ 53. The $3,000 payments each to proposed plaintiffs Thimons and Schmidt are modest under the Ninth Circuit's presumptively reasonable $5,000 service award amount and other approved settlements. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Plaintiff Thimons spent ten hours gathering and reviewing documents, explaining how his job worked, strategizing about how to prosecute the case, and assisting counsel with the case. Thimons Decl. ¶¶ 2, 4-7. Plaintiff Schmidt spent nine hours gathering and reviewing documents, explaining how her job worked, strategizing about how to prosecute the case, and preparing to defend against Advantage's motion to compel arbitration by drafting and executing a declaration. Schmidt Decl. ¶¶ 2, 4-8. The two of them are still employed by Advantage. Thimons Decl. ¶ 3; Schmidt Decl. ¶ 3. Further, they will sign a Complete and General Release of all Claims in exchange for the service award. SA § 2.7(d) & Ex. 5.

Plaintiffs' proposed enhancement payments will be the subject of a separate motion supported by admissible evidence and filed prior to the opt-out/objection deadline.

**B.**     **Attorneys' Fees of One-Third of the Common Fund Are Justified.**

Plaintiffs will file a separate motion for the requested attorneys' fees, costs, and expenses thirty-five (35) days prior to the opt-out/objection deadline so that California Class Members will have an opportunity to inspect Plaintiffs' Counsel's fee application prior to the deadline for submitting objections or requests for exclusion. *N.D. Cal. Class Settlm't Guidance* ¶ 9. Plaintiffs' Counsel will not seek more than one-third of the gross settlement amount of $1,200,000 (*i.e.*, $400,000), plus actual

767521.25

1    out-of-pocket expenses in prosecuting this lawsuit, which will not exceed $20,000.  SA § 2.7(c).  In the

2    instant motion, Plaintiffs do not seek approval of the fees and costs, but only ask that the Court include

3    the maximum potential fee and cost request in the Notice so that the Class can be informed of it.

4        Plaintiffs are entitled to recover their attorneys' fees and costs for prevailing on their asserted

5    claims.  *See* Cal. Lab. Code §§ 1194(a), 2699(g)(1); Cal. Code Civ. Proc. § 1021.5; 29 U.S.C.

6    § 216(b).  Here, Plaintiffs are prevailing parties and entitled to recover their reasonable attorneys' fees

7    and costs because they obtained a successful settlement.  *See Farrar v. Hobby*, 506 U.S. 103, 111

8    (1992); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089

9    (9th Cir. 2010) ("Litigation that results in an enforceable settlement agreement can confer 'prevailing

10    party' status on a plaintiff.").

11        The Ninth Circuit has explained that, "[b]ecause the benefit to the class is easily quantified in

12    common-fund settlements, we have allowed courts to award attorneys a percentage of the common

13    fund in lieu of the often more time-consuming task of calculating the lodestar."  *In re Bluetooth*

14    *Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *see Brawner*, 2016 U.S. Dist. LEXIS

15    4975, at *11 ("Where the settlement involves a common fund, courts typically award attorney's fees

16    based on a percentage of the total settlement."); *Burden v. Selectquote Ins. Servs.*, No. C 10-5966 LB,

17    2013 U.S. Dist. LEXIS 109110, at *11-12 (N.D. Cal. Aug. 1, 2013) (The percentage method is

18    appropriate where the amount of settlement is set without reversion to the defendant, and the lodestar

19    method may encourage unjustified work and protracting the litigation.).

20        As a smaller fund case of $1.2 million, an upward departure to a fee award of 33% is

21    appropriate in this case.  While the "benchmark" for a reasonable percentage-of-the-fund award is

22    twenty-five percent, courts may depart either upward or downward if the "special circumstances" of

23    the case justify a departure.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.  An upward

24    departure is often appropriate for smaller class funds below $10 million, particularly when awarding

25    the benchmark would undercompensate counsel for their time spent.  *See, e.g.*, *Craft v. County of San*

26    *Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 Million will often

27    result in fees above 25%.").  This Court routinely award fees of greater than 25% for smaller funds.

28

767521.25

*See Patel v. Trans Union LLC*, No. 14-cv-00522-LB, 2018 U.S. Dist. LEXIS 40282, at *17 (N.D. Cal. Mar. 11, 2018) (granting fee of 33% for $8 million fund and citing with approval the plaintiffs' motion collecting cases where courts granted fees higher than 25% for settlement funds under $10 million); *Burden*, 2013 U.S. Dist. LEXIS 109110 at *13 (awarding fee of 33% for $750,000 fund, holding that awarding fees at a rate higher than the 25% benchmark was appropriate in cases involving a relatively small settlement fund); *Barnes v. Equinox Group, Inc.*, No. C 10-3586 LB, 2013 U.S. Dist. LEXIS 109088, at *13-14 (N.D. Cal. Aug. 1, 2013) (awarding fee of 33% for $150,000 fund, holding that 33% was appropriate given the small figures at stake).

       The requested fee is also reasonable because Class Counsel achieved significant results for the class, including non-monetary benefits, took on the risk of non-payment by prosecuting the case on a contingency basis, and litigated efficiently. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (factors considered by the Ninth Circuit in determining the percentage include results achieved, riskiness of prosecuting the litigation, and financial burden from prosecuting the case on a contingency basis). Counsel achieved significant results for the class by securing a $1.2 million fund as well as a change in defendant's policy of classifying CDMRs as exempt and took on the risk of litigating on a contingency basis, justifying a 33% fee. *See* Ho Decl. ¶¶ 7, 57; *Burden*, 2013 U.S. Dist. LEXIS 109110, at *13 (approving 33% fee as fair considering counsel obtained quality results in securing a $750,000 fund and assumed substantial risk after litigating the case on a contingency basis); *Barnes*, 2013 U.S. Dist. LEXIS 109088, at *13-14 (awarding 33% as warranted in a case given the results achieved, substantial risk, contingency basis, and class reaction). Further, the case was efficiently settled just ten months after filing the complaint. *See* Ho Decl. ¶ 45; *Patel*, 2018 U.S. Dist. LEXIS 40282, at *17 (approving fee of 33% based on counsel's efforts and the substantial benefits to the class, the efficiency of the litigation, the quality of the representation, and the contingent risk).

       The requested fee is also appropriate under the lodestar cross check. *See Brawner*, 2016 U.S. Dist. LEXIS 4975, at *12 ("After applying the percentage method, courts typically roughly calculate the lodestar as a "cross-check to assess the reasonableness of the percentage award."); *Taylor* 2016 U.S. Dist. LEXIS 125895, at *15 (same). "The lodestar . . . is produced by multiplying the number of

767521.25

hours reasonably expended by counsel by a reasonable hourly rate.  Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented.'" *Brawner*, 2016 U.S. Dist. LEXIS 4975, at *12-13 (internal  citations omitted); *Taylor*, 2016 U.S. Dist. LEXIS 125895, at *15.  Through November 19, 2019, Plaintiffs' Counsel have a lodestar of $278,964 for 596.5 hours of work, and expect to incur an additional 100 hours of time to bring this case to a close, including: appearing at the preliminary approval hearing; overseeing the notice process, addressing class member inquires and responding to any objections; preparing a final approval motion with supporting declarations from counsel and the claims administrator; preparing a motion for fees, costs and enhancements with supporting declarations from counsel and the four class representatives; appearing at the final approval hearing; and ensuring that the settlement funds are timely and correctly disbursed. Ho Decl. ¶ 57.  With the anticipated additional work, the ultimate lodestar is expected to be approximately $325,730.  *Id.*  Counsel's lodestar is supported by detailed and contemporaneously-maintained billing records of time reasonably spent by Plaintiffs' Counsel litigating this case for close to a year based on hourly rates that are commensurate with the rates of practitioners with similar experience within the California legal market.  *Id.*; Fox Decl. ¶¶ 15-16.

The requested fees here represent a multiplier of 1.2x on Counsel's expected final lodestar.  Ho Decl. ¶ 57.  The requested multiplier is within the range of acceptable multipliers.  *See Bolton*, 2013 U.S. Dist. LEXIS 150299 at *13 ("The customary range for multipliers is between 1.0 and 4.0."); *cf. Vizcaino.*, 290 F.3d at 1051 n.6 (83% of multipliers were in the 1x- to 4x-range).  Further, a multiplier is warranted in this case by the quality of the representation, the efficiency of the litigation, the results obtained, and the contingent risk presented.  *See Taylor*  2016 U.S. Dist. LEXIS 125895 at *17 (approving a multiplier of close to two as warranted by counsel's efforts, substantial benefits to the class, the efficiency of the litigation, the quality of the representation, and the contingent risk); *Bolton*, 2013 U.S. Dist. LEXIS 150299, at *16-17 (approving a fee award with a multiplier of slightly more than 1.5 times, finding that counsel achieved significant results for the class by securing a large

NOTICE OF UNOPPOSED MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION SETTLEMENT - CASE NO. 3:18-CV-07205-LB

767521.25

monetary award ($1.7 million fund) and a change in pay practices, and litigated the case efficiently). Here, like *Bolton*, counsel achieved significant results for the class by securing a $1.2 million fund and a change in defendant's policy of classifying CDMRs as exempt. *See* Ho Decl. ¶ 7; *Bolton*, 2013 U.S. Dist. LEXIS 150299 at *16-17. Further, like *Taylor*, where the case was settled a year after the complaint was filed, here the case was efficiently settled just ten months after filing the complaint. *See* Ho Decl. ¶ 45; *Taylor*, 2016 U.S. Dist. LEXIS 125895 at *17.

In addition, Plaintiffs' Counsel collectively expect to incur no more than $20,000 in actual out-of-pocket litigation costs and expenses once this Settlement is completed. Ho Decl. ¶ 58; Fox Decl. ¶ 17. These expenses include the types of litigation costs that courts routinely approve, including filing fees, research expenses, document processing costs, and others. *Id*. When Plaintiffs file their fee motion, they will provide the Court with detailed information concerning their litigation costs.

Accordingly, the Court should preliminarily approve Plaintiffs' ability to seek their requested attorneys' fees and costs award for purposes of inclusion in the class notice materials.

**C.** **The Court Should Approve the Settlement Administrator, Notice Process, and Notices.**

The parties have agreed on Atticus to be the Settlement Administrator after soliciting bids from two experienced and reputable administrators. Ho Decl. ¶ 55. Atticus' bid was much lower, and given the relatively smaller size of this Settlement, was the main determining factor for its selection. *Id*. The settlement administration fee (no more than $20,000), which will be paid from the gross settlement, is reasonable in relation to the amount of the recovery and is well within the range of administration costs for cases like this. *Id*. The process is also typical and successful for this type of employment case, where the information for the class members is usually very current and accurate. *Id*.

**1.** **California Class Members**

An agreed-upon notice (the "California Class Notice") will be sent to the California Class Members, together with a Statement of Weeks Form. *See* SA § 2.2 & Exs. 2 & 2-A. The notice describes the litigation, the terms of the Settlement, and each California Class Member's options with respect to participating in the Settlement. *See* California Class Notice. The California Class Notice provides information regarding the final approval hearing and how California Class Members can

767521.25

1   obtain additional information, object, or opt out within 45 days of the notice mailing. *See* California

2   Class Notice §§ VI, VII, VIII. The notice explains that California Class Members who do not timely

3   opt out will be members of the Class for settlement purposes, and will release the claims asserted in the

4   lawsuit, as well as any claims that could have been asserted based upon the facts alleged in the

5   complaint. *Id.* § II.B. The scope of the release is the same as the claims in the operative complaint.

6   *See* SAC ¶ 2; *N.D. Cal. Class Settlm't Guidance* ¶ 1(c). The Class Notice will inform each recipient of

7   his or her estimated settlement payment. *See* California Class Notice § III. Class members who

8   affirmatively opt out will not receive a settlement payment, but also will not be subject to any release

9   of claims. *See* California Class Notice § VI.A. As explained in the Notice, California Class members

10  (unless they opt out) may object to the Settlement. *Id.* § VI.B.

## 2.    Non-California Opt-in Eligible Plaintiffs

12      An agreed-upon notice of Notice of Settlement of Collective Action Lawsuit ("Non-California

13  FLSA Notice") will be sent to all Non-California Opt-in Eligible Plaintiffs, together with a Statement

14  of Weeks Form. *See* SA § 2.2 & Exs. 3 & 3-A. The notice describes the litigation, the terms of the

15  Settlement, and each Non-California Opt-in Eligible Plaintiff's options with regard to participating in

16  the Settlement, *i.e.*, either (i) timely cash the check and participate in the Settlement, or (ii) do nothing

17  and do not participate in the settlement. *See* Non-California FLSA Notice § VI. The notice will

18  explain how FLSA Class Members can obtain additional information about the litigation and the

19  settlement. *See* Non-California FLSA Notice § VIII. The notice will explain that Non-California Opt-

20  in Eligible Plaintiffs who cash the check within 180 days following the date of initial mailing shall

21  become Participating Claimants. *Id.* § VI.A. The notice explains that by opting in, Non-California

22  Opt-in Eligible Plaintiffs will release their FLSA claims in exchange for a settlement payment. *Id.*

23  § III. The scope of the release is the same as the claims in the operative complaint. *See* SAC ¶ 1; *N.D.*

24  *Cal. Class Settlm't Guidance* ¶ 1(c). If Non-California Opt-in Eligible Plaintiffs choose not to opt in,

25  they will not release any claims, as the notice explains. *See* Non-California FLSA Notice § VI.B. The

26  notice will also inform each recipient of his or her estimated settlement payment if he or she

27  participates in the settlement. *Id.* § IV. One-third of the settlement payment will be considered wages,

28

22

767521.25

1    one-third will be considered interest, and one-third will be considered penalties, liquidated damages,

2    and other non-wage recovery.  SA § 2.7(e).

3        The proposed notices will be sent via first-class mail to the last known mailing address of each

4    Non-California Opt-in Eligible Plaintiff or California Class Member, and prior to mailing the Class

5    Notices, the Claims Administrator will consult the U.S. Postal Service's National Change of Address

6    Database (or similar customarily used search method) to review the accuracy of and, if possible,

7    update a Class member's mailing address.  SA § 2.2(b).  The proposed opt-out and objection period of

8    forty-five days is longer than those approved by other district courts.  *See, e.g.*, *Dennis v. Kellogg Co.*,

9    No. 09-CV-1786-IEG (WMC), 2013 U.S. Dist. LEXIS 64577, at *21, 23 (S.D. Cal. May 3, 2013)

10   (notice to be mailed 60 days before final approval hearing, with exclusions, if any, due 30 days before

11   hearing); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS

12   19674, at *5 (S.D. Cal. Mar. 4, 2010) (approving thirty-day notice and opt-out period in

13   misclassification case); *Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF (SHx), 2008 U.S.

14   Dist. LEXIS  115560, at *15 (C.D. Cal. Dec. 15, 2008) (same).  The proposed settlement Notices and

15   the proposed method of distribution of the Notices should be approved.  *See* Fed. R. Civ. P.

16   23(c)(2)(B); *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

17   ## VII.   CONCLUSION

18       For the foregoing reasons, Plaintiffs submit that the settlement is fair, adequate and reasonable,

19   and in the best interests of Plaintiffs, including the Opt-in Plaintiffs, the California Class Members, and

20   the Non-California Opt-in Eligible Plaintiffs.  Under the applicable class and collective action

21   standards, Plaintiffs request that this motion be granted; the Settlement of the Class, Collective, and

22   Representative Action be preliminarily approved; the California Class and FLSA Collective described

23   herein be certified for settlement purposes only; Wilma Foster be appointed the Class Representative;

24   Goldstein, Borgen, Dardarian & Ho and Obermayer Rebmann Maxwell & Hippel, LLP be appointed

25   as Class Counsel; appointment of Atticus as claims administrator be approved; the sending of Notices

26   in the form submitted herewith be authorized; the leave to file a second amended complaint be granted,

27   and a final approval hearing for the Settlement be scheduled for March 5, 2020 at 9:30 a.m., or as soon

28

767521.25

1    thereafter as the matter may be heard.  A Proposed Order is submitted herewith.

2      Dated:  November 20, 2019              Respectfully submitted,

3                                                  */s/ Laura L. Ho*
                                                 Laura L. Ho
4                                                Byron R. Goldstein
                                                 GOLDSTEIN, BORGEN, DARDARIAN & HO
5
                                                 Bruce C. Fox
6                                                Jeffrey B. Cadle
                                                 Andrew J. Horowitz
7                                                OBERMAYER REBMANN MAXWELL & HIPPEL, LLP

8                                                Attorneys for Plaintiffs and the Proposed Classes

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF UNOPPOSED MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE
ACTION SETTLEMENT - CASE NO. 3:18-CV-07205-LB

767521.25