1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

WILMA FOSTER,

Case No. 18-cv-07205-LB

12

Plaintiff,

13

v.

**PRELIMINARY APPROVAL ORDER**

Re: ECF No. 42

14

ADVANTAGE SALES & MARKETING,
LLC.,

15

16

Defendant.

17

**INTRODUCTION**

18    This is an overtime-pay case under federal and California law: a nationwide collective action

19  under the Federal Labor Standards Act ("FLSA") and a California class action under Federal Rule

20  of Civil Procedure 23.[1] The plaintiffs claim that their employer, defendant Advantage Sales and

21  Marketing, LLC, d/b/a Advantage Solutions, misclassified them as exempt under the FLSA and

22  California law and so failed to pay them requisite compensation. The parties entered into a

23  settlement agreement, and the plaintiffs moved for preliminary approval of the proposed

24  settlement. The court grants the unopposed motion.

25

26

27  ───────────────
[1] Second Am. Compl., Ex 1. to Ho Decl. – ECF No. 42-1 at 47−65. Citations refer to material in the
Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of

28  documents.

ORDER – No. 18-cv-07205-LB

**STATEMENT**

**1. The Lawsuit**

On November 18, 2018, named plaintiff Wilma Foster filed this wage-and-hours lawsuit on behalf of employees who worked for Advantage as Customer Development Managers-Retail ("CDMRs") as (1) a FLSA collective action on behalf of a nationwide collective and (2) a class action on behalf of a California class alleging violations of California law.[2] (Shortly after the plaintiff filed the complaint, Advantage reclassified CDMRs from exempt to non-exempt.[3]) The First Amended Complaint (filed on February 4, 2019) added a Private Attorney General Act ("PAGA") claim.[4] Adam Thimons and Kimberly Schmidt filed consent-to-join forms in December 2018.[5] The Second Amended Complaint ("SAC") (filed November 20, 2019) added them as named plaintiffs.[6]

Advantage produced documents and data enabling the plaintiffs to make informed damages assessments, and on March 11, 2019, the parties met in person for a day-long settlement discussion, made progress, and ultimately were unable to settle that day.[7] On March 28, 2019, Advantage filed a motion to compel the opt-in plaintiffs to arbitration and to stay the PAGA claim.[8] The plaintiffs served requests for production relating to the motion to compel, asked the defendant to stipulate to the filing of a SAC, and continued to confer with the defendants about the discovery requests and the SAC.[9] The parties then agreed to a settlement conference and to postpone the plaintiffs' filing their opposition to the motion to compel, and the case was referred

---

[2] Compl. – ECF No. 1.

[3] Mot. – ECF No. 42 at 10; Ho Decl. – ECF No. 42-1 at 1 (¶ 2).

[4] First Am. Compl. – ECF No. 15 at 14 (¶¶ 87−93).

[5] Consent Forms – ECF No. 14.

[6] SAC, Ex. 1 to Ho Decl. – ECF No. 42-1 at 49 (¶¶ 4−5).

[7] Ho Decl. – ECF No. 42-1 at 3 (¶ 8).

[8] Mot. – ECF No. 25.

[9] Ho Decl. – ECF No. 42-1 at 4 (¶ 13).

United States District Court
Northern District of California

to Magistrate Judge Kandis Westmore for a settlement conference.[10] At the settlement conference

on September 26, 2019, the parties reached a tentative agreement and memorialized the material

terms on the record.[11] They finalized their long-form settlement agreement on November 7, 2019,

and agreed to the filing of the SAC, and the plaintiffs thereafter filed the motion for preliminary

approval of the settlement and leave to file the SAC.[12]

The plaintiffs ask for leave to file the SAC, and the court grants leave.[13] The court asks the

plaintiffs to file a stand-alone version of the SAC so that it is more obvious on the docket.

## 2. Proposed Settlement

### 2.1 Settlement Classes

There are 59 California class members and 261 Non-California opt-in eligible plaintiffs.[14]

The proposed California Rule 23 class is as follows:

> Individuals employed by Advantage Sales & Marketing LLC d/b/a Advantage
> Solutions as Customer Development Manager-Retail ("CDMR") in California
> during any work week between January 1, 2017 and December 31, 2018 and who
> were classified as exempt.[15]

The nationwide proposed FLSA collective is as follows:

> Individuals employed by Advantage Sales & Marketing LLC d/b/a Advantage
> Solutions as Customer Development Manager-Retail ("CDMR") outside of
> California during any work week between January 1, 2017 and December 31, 2018
> and who were classified as exempt, excluding, however, all California Class
> Members.[16]

---

[10] Stipulation and Order – ECF No. 29.

[11] Minute Entry – ECF No. 37.

[12] Settlement Agreement, Ex. A to Ho Decl. – ECF No. 42-1 at 19−45; SAC− ECF No. 42-1 at 47−65; Mot. – ECF No. 42.

[13] Mot. – ECF No. 42 at 13−14.

[14] Ho Decl. – ECF No. 42-1 at 5 (¶ 23).

[15] Proposed Order – ECF No. 42-6 at 2; Settlement Agreement, Ex. A to Ho Decl. – ECF No. 42-1 at 21 (§ 1.3).

[16] Proposed Order – ECF No. 42-6 at 2; Settlement Agreement, Ex. A to Ho Decl. – ECF No. 42-1 at 21 (§§ 1.13–1.15).

The settlement agreement specifies the following definitions for the class:

> The "California Class" and "California Class Members" means all individuals who are identified by Defendant as having worked as exempt Customer Development Managers-Retail ("CDMR") for Defendant in California during any workweek between January 1, 2017 and December 31, 2018.
>
> …
>
> "Non-California Opt-in Eligible Plaintiffs" are the individuals identified by Defendant as having worked as CDMRs in any state other than California during any workweek between January 1, 2017 and December 31, 2018. Non-California Opt-in Eligible Plaintiffs will receive a Notice of Collective Action Settlement and, after final approval of the settlement is granted, a check in the amount of their Individual Payment Amount minus any payroll taxes withheld.
>
> "Non-California Opt-in Plaintiffs" are all Non-California Opt-in Eligible Plaintiffs who elect to opt in to this action pursuant to 29 U.S.C. § 216(b) by cashing their settlement check, as set forth below.
>
> "Participating Claimants" means all California Class Members who do not timely request exclusion from the California Class, and all Non-California Opt-in Plaintiffs.[17]

## 2.2 Settlement Amount and Allocation

The total settlement amount is $1,200,000: (1) a "Net Settlement Amount" of $734,000 ($362,000 to the California plaintiffs and $372,000 to the non-California plaintiffs[18]), with allocations to individuals of their pro rata share based on workweeks, and allocated one-third to wages and two-thirds to non-wages; (2) $10,000 for the PAGA claim (deducted from the allocation to the California class members); (3) service awards of $10,000 to Ms. Foster and $3,000 each to Mr. Thimons and Ms. Schmidt; (4) one-third (or $400,000) for attorney's fees; (5) actual litigation costs not to exceed $20,000; and (6) settlement administration costs not to exceed $20,000.[19]

---

[17] Settlement Agreement, Ex. A to Ho Decl. – ECF No. 42-1 at 21−23 (¶¶ 1.3, 1.13, 1.14, 1.15).

[18] The division is roughly equal due to the risk of application of the fluctuating workweek on the FLSA overtime claim. Ho Decl. – ECF No. 42-1 at 8 (¶ 36), 10 (¶ 47), & 11 (¶ 50); *see* Mot. – ECF No. 42 at 12 (discussing this point and addressing conflicting district court authority in the Ninth Circuit).

[19] Ho Decl. – ECF No. 42-1 at 4−5 (¶¶ 20−22); Settlement Agreement, Ex. A to Ho Decl. – ECF No. 42-1 at 30−37 (§ 2.7).

California class members who worked for the entire class period will receive a payment of around $8,400, and non-California opt-in eligible plaintiffs who worked for the entire collective period will receive around $2,305.[20] The median recovery is around $7,990 for the California class members and $1,470 for the non-California opt-in eligible plaintiffs.[21] Checks will be mailed automatically (with no claim forms required) except for California class members who opt out.[22] For California Class Members who do not opt out or cash their checks within 180 days, the remaining funds will be given to a *cy pres* beneficiary, Employee Rights Advocacy Institute for Law and Policy, a non-profit that advocates for employee rights.[23] The parties do not anticipate "much if any monies" that will go to the *cy pres* recipient.[24] If the non-California CMDRs do not cash their checks, they will not be opting into the settlement, their claims will not be released, and the funds will be returned to Advantage.[25]

## 2.3   Release

The release is limited to the claims that were brought or could have been brought based on the facts alleged.[26] The three named plaintiffs have a general release.[27]

## 2.4   Administration

The proposed settlement administrator is Atticus.[28] Five business days after preliminary approval of the settlement, Advantage will give Atticus the names, social security numbers, last known addresses, and dates worked as an exempt CDMR during the period from January 1, 2017 to December 31, 2018.[29] Within 14 days of preliminary approval, the administrator will mail

---

[20] Ho. Decl. – ECF No. 42-1 at 9–10 (¶ 43).

[21] *Id.*

[22] *Id.* at 6 (¶ 25).

[23] Settlement Agreement, Ex. A to Ho Decl. – ECF No. 42-1 at 34 (§ 2.7(g)).

[24] Ho Decl. – ECF No. 42-1 at 6 (¶ 25).

[25] *Id.* at 4–5 (¶ 20).

[26] Settlement Agreement, Ex. A to Ho Decl. – ECF No. 42-1 at 23–24 (§ 1.19), 39−40 (§ 4).

[27] *Id.* at 32 (§ 2.7(d)).

[28] Ho Decl. – ECF No. 42 at 13 (¶ 5).

[29] Settlement Agreement, Ex. A to Ho Decl. – ECF No. 42-1 at 26 (§ 2.2(a)).

notice (and perform a national-change-of-address database review before mailing), and it will try

to locate any employees through skip-tracing for any mail returned undeliverable.[30] Other

administration procedures — including notice, administration, procedures for exclusion, and

procedures for objections — are set forth in the settlement agreement.[31]

# ANALYSIS

## 1.  Jurisdiction

The court has federal-question jurisdiction under 28 U.S.C. § 1331 for the FLSA claims and

supplemental jurisdiction under 28 U.S.C. § 1367 for the state-law claims.

## 2.  Conditional Certification of Settlement Classes

The court determines whether the settlement classes meet the requirements for class

certification first under Rule 23 and then under the FLSA.

### 2.1    Rule 23 Requirements

The court reviews the propriety of class certification under Federal Rule of Civil Procedure

23(a) and (b). When parties enter into a settlement before the court certifies a class, the court

"must pay 'undiluted, even heightened, attention' to class certification requirements" because the

court will not have the opportunity to adjust the class based on information revealed at trial. *Staton*

*v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 620 (1997)); *Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*, 926

F.3d 539, 557 (9th Cir. 2019) (en banc).

Class certification requires the following: (1) the class must be so numerous that joinder of all

members individually is "impracticable"; (2) there must be questions of law or fact common to the

class; (3) the claims or defenses of the class representatives must be typical of the claims or

defenses of the class; and (4) the person representing the class must be able to fairly and

---

[30] *Id*. at 26−27 (§ 2.2(b)).

[31] *Id*.

United States District Court
Northern District of California

adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *In re Hyundai and Kia*, 926 F.3d at 556. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The court finds preliminarily (and for settlement purposes only) that the Rule 23(a) factors — numerosity, commonality, typicality, and adequacy — support the certification of the class. It also finds preliminarily under Rule 23(b)(3) (and for settlement purposes only) that the common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, there are approximately 59 California Class Members.[32] The class is numerous. *See Nelson v. Avon Prods.*, No. 14-cv-02276-BLF, 2015 U.S. Dist. LEXIS 51104, at *15 (N.D. Cal. Apr. 17, 2015).

Second, there are questions of law and fact common to the class that predominate over any individual issues. Common fact questions are that Advantage classified all CDMRs as exempt during the class period, the CDMRs had the same job duties, Advantage sent them schedules with no meal-and-rest periods on the schedules, and they all had arbitration agreements. Common law questions include whether the arbitration agreements are valid and whether the CDMRs qualify for any of the exemptions under California law or the FLSA. The claims depend on common contentions that — true or false — will resolve issues central to the validity of the claims. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017). These common questions predominate over any questions affecting only individual members.

Third, the claims of the representative parties are typical of the claims of the class. The representative parties and all class members allege wage-and-hours violations based on similar facts. All representatives possess the same interest and suffer from the same injury. *Cf. Betorina*, 2017 WL 1278758, at *4.

---

[32] Ho Decl. – ECF No. 42-1 at 5 (¶ 23).

Fourth, the representative parties fairly and adequately protect the interests of the class. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia*, 926 F.3d at 566 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The court is satisfied that the factors exist here: the named plaintiffs have shared claims and interests with the class (and no conflicts of interest), and they retained qualified and competent counsel who have prosecuted the case vigorously. *Cf. id.*; *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court conditionally certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only and for the purpose of giving the class notice of the settlement and conducting a final approval hearing.

## 2.2 FLSA Class

The FLSA authorizes "opt-in" representative actions where the complaining parties are "similarly situated" to other employees. 29 U.S.C. § 216(b); *see generally Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1042 (2016). All class representatives worked as CDMRs during the class period, and their wage-and-hour claims — and related issues such as the validity of the arbitration agreements — present common fact and law questions. The court preliminarily authorizes the FLSA collective for settlement purposes only.

## 3. Preliminary Approval of Settlement

The approval of a class-action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.

1    Settlement is a strongly favored method for resolving disputes, particularly "where complex

2    class action litigation is concerned." *In re Hyundai and Kia*, 926 F.3d at 556 (quoting *Allen v.*

3    *Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). A court may approve a proposed class-action

4    settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed.

5    R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best

6    possible; it determines only whether the settlement is fair, free of collusion, and consistent with

7    the named plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1026–27 (9th Cir.

8    1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal:

9    "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely duration of

10   further litigation; [(3)] the risk of maintaining class-action status throughout trial; [(4)] the amount

11   offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding;

12   [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and

13   [(8)] the reaction of the class members to the proposed settlement." *Id.* at 1026 (citation omitted).

14       "Where a settlement is the product of arms-length negotiations conducted by capable and

15   experienced counsel, the court begins its analysis with a presumption that the settlement is fair and

16   reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL

17   1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see, e.g.*, *In re Hyundai and Kia*, 926 F.3d at 570

18   ("'[W]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated

19   resolution.'") (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)); *Nat'l*

20   *Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement

21   following sufficient discovery and genuine arms-length negotiation is presumed fair.").

22       The court has evaluated the proposed settlement agreement for overall fairness under the

23   *Hanlon* factors and concludes that preliminary approval is appropriate.

24       First, the settlement appears fair. As the plaintiffs point out, it provides good value (when

25   contrasted to the maximum damages, including PAGA penalties), and they collect cases in this

26

27

28

district where courts have approved settlements at comparable or lower rates compared to the maximum recoverable at trial.[33]

Second, a related point is that the value is significant given the litigation risks and uncertainties. Class certification could require individualized inquiries about the CDMR's duties and whether they were exempt from federal and state overtime requirements.[35] There are uncertainties about the amounts of overtime, and there is a relatively short liability period.[36] A settlement now also results in money paid now, while litigation and arbitration result in delay and expense.

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after a settlement conference with Judge Westmore.

The recoveries here are adequate to justify preliminary approval. Given other comparable settlements and the litigation risks identified above, the settlement amount at least preliminarily appears fair.

For the same reasons, the court preliminarily approves the settlement of the FLSA collective action.

The PAGA allocation is within the range of reasonable settlements.[37] *See, e.g.*, *Viceral v. Mistras Grp.*, No. 15-cv-02198-EMC, 2015 U.S. Dist. LEXIS 140759, at \*25–30 (N.D. Cal. Oct. 11, 2016).

The court will address the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five percent is a benchmark in common fund cases); *cf. Vizcaino v.*

---

[33] Mot. – ECF No. 42 at 19−20 (collecting cases); Ho Decl. – ECF No. 42-1 at 10 (¶ 47).

[35] Mot. – ECF No. 42 at 18. "[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation for settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai and Kia*, 926 F.3d at 558 (citing 2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018)).

[36] Mot. – ECF No. 42 at 18.

[37] *Id.* at 22–23 (collecting cases).

1  *Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (twenty-five percent benchmark, though a

2  starting point for analysis, may be inappropriate in some cases; fees must be supported by

3  findings).

4

5  **4. Appointment of Class Representative, Class Counsel, and Claims Administrator**

6  The court provisionally appoints Ms. Foster as the class representative and finds provisionally

7  that she has claims that are typical of members of the class generally and that she is an adequate

8  representative of the other members of the proposed classes.

9  The court provisionally appoints Laura L. Ho and Byron Goldstein of Goldstein, Borgen,

10  Dardarian & Ho LLP and Andrew Horowitz of Obermayer Rebmann Maxwell & Hippel, LLP as

11  class counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). The court finds

12  provisionally that they have sufficient qualifications, experience, and expertise in prosecuting

13  class actions.

14  The court appoints Atticus as the Administrator. It will administer the settlement in accordance

15  with the requirements set forth in the settlement agreement.

16

17  **5. Class Notice**

18  The court approves the class notice and plan. The court finds that the class notice provides the

19  best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class

20  members of their rights under the settlement agreement, and meets the requirements of due

21  process. *Cf. In re Hyundai and Kia*, 926 F.3d at 567 ("Notice is satisfactory if it generally

22  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

23  investigate and to come forward and be heard.") (internal quotation marks omitted) (quoting

24  *Rodriguez*, 563 F.3d at 962). The forms of notice fairly, plainly, accurately, and reasonably

25  provide class members with all required information, including (among other things): (1) a

26  summary of the lawsuit and claims asserted; (2) a clear definition of the classes; (3) a description

27  of the material terms of the settlement, including the estimated payment; (4) a disclosure of the

28  release of the claims should they remain class members; (5) an explanation of class members' opt-

out rights, a date by which they must opt out, and information about how to do so; (6) the date,

time, and location of the final fairness hearing; and (7) the identity of class counsel and the

provisions for attorney's fees, costs, and class-representative service awards.[38]

## 6. Service Awards

District courts must evaluate proposed awards individually, using relevant factors that include

"the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in

pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are

intended to compensate class representatives for work done on behalf of the class, to make up for

financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citation omitted).

The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has]

cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info.*

*Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth

Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive

awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

The court defers consideration of the awards until the final approval hearing.

## 7. *Cy Pres* Award

The *cy pres* distribution appears to account for and have a substantial nexus to the nature of the

lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v.*

*Facebook, Inc.*, 696 F.3d 811, 818–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034,

1048–41 (9th Cir. 2011). The court defers consideration of the award until the final approval

hearing.

---

[38] Exs. 2−3 to Ho Decl. – ECF No. 42-1 at 79−103.

**8. Compliance with Class Action Fairness Act**

The plaintiffs will provide notice of the settlement — which is deemed filed as of the date of this order — and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials. Any final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715.

**9. Procedures for Final Approval Hearing**

**9.1 Deadlines**

| Event | Date |
| --- | --- |
| Defendant provides class list to administrator | Five days after Preliminary Approval |
| Administrator mails Notice Packet | 14 days after Preliminary Approval |
| File motion for attorney's fees and costs | 10 days after notice is mailed |
| Deadline for postmark by registered mail of any opt-out letter | 45 days after notice is mailed |
| Deadline for responses to objections | Five court days before Final Approval Hearing |
| File motion for final approval | 21 days before the Final Approval Hearing |
| Final Approval Hearing | March 12, 2020, at 9:30 a.m. |

**9.2 Participation in the Settlement**

Any member of the FLSA Collective who wishes to participate in the settlement can cash the settlement check within 180 days of the initial mailing of the checks. Such individuals who timely cash their settlement check will be deemed to have filed a written consent to join this Collective Action pursuant to 29 U.S.C. § 216(b). All Members of the California Class who do not request exclusion from the settlement are deemed Participating Claimants in the Lawsuit.

**9.3 Exclusion From the Settlement**

Any member of the California Class who does not want to participate in the settlement may request exclusion from the class by submitting a signed opt-out letter to the Claims Administrator. To be effective, the opt-out letter must include the individual's name and an unequivocal statement that the individual requests to be excluded from the class, and it must be post-marked

1  within forty-five (45) days following the date of the initial mailing of the Notice of Class,

2  Collective, and Representative Action Settlement.

3  **9.4  Objections**

4  Any California Class Members who wish to present objections to the proposed settlement at

5  the Fairness Hearing should do so first in writing. To be considered, the objections should (a)

6  clearly identify the case name and number (*Foster v. Advantage*, Case Number 3:18-cv-07205-

7  LB), (b) be submitted to the court either by mailing them to the Class Action Clerk, United States

8  District Court for the Northern District of California, 450 Golden Gate Avenue, 16th Floor, San

9  Francisco, CA 94102, or by filing them in person at any location of the United States District

10  Court for the Northern District of California, and (c) be filed or postmarked on or before 45 days

11  after the initial mailing of the Notice of Class, Collective, and Representative Action Settlement

12  by the Claims Administrator.

13  **9.5  Effect of the Settlement Agreement**

14  All named and opt-in plaintiffs will be bound by the terms and conditions of the Settlement

15  Agreement (if the Settlement Agreement is finally approved by the court). All members of the

16  California Class who do not timely and properly exclude themselves from the class and FLSA

17  collective members who opt in will be bound conclusively by all of the terms of the Settlement

18  Agreement, if finally approved, and by any judgment entered upon final approval. Class Counsel

19  will file returned exclusion statements with the court as set forth in the Settlement Agreement.

20  **9.6 Order for Settlement Purposes**

21  The findings and rulings in this order are made for the purposes of settlement only and may

22  not be cited or otherwise used to support the certification of any contested class or subclass in this

23  action or any other action.

24  **9.7  Nullification**

25  This order will be null and void and of no force or effect, and this action will proceed as

26  though a class had never been certified, if the court does not finally approve the Settlement

27  Agreement or if the Settlement Agreement, after being finally approved by the court, is invalidated

28  on appeal or terminated pursuant to its own terms.

**9.8 Use of Settlement Agreement and Ancillary Items**

Neither the Settlement Agreement (whether or not it is finally approved), nor any ancillary documents, actions, statements, or filings in furtherance of settlement (including matters associated with the mediation) will be admissible or offered into evidence in this action or any related or similar action for the purposes of establishing, supporting, or defending against any claims that were raised or could have been raised in this action or are similar to such claims.

**CONCLUSION**

The court (1) conditionally certifies the California class and the FLSA collective for settlement purposes only, (2) authorizes the filing of the SAC, (3) preliminarily approves the settlement and authorizes notice as set forth in this order, (4) approves the notice plan, (5) provisionally appoints the class representatives and class counsel, (6) appoints Atticus as the claims administrator, (7) orders the procedures in this order (including all dates in the chart), and (8) orders the parties and the claims administrator to carry out their obligations in the settlement agreement.

This disposes of ECF No. 42.

**IT IS SO ORDERED.**

Dated: December 9, 2019

_____
LAUREL BEELER
United States Magistrate Judge